## JAMES MORGAN & others *vs.* ROGER S. MOORE.

A division of an estate held in common, by mutual deeds of release from the tenants to each other, giving the precise admeasurements of each lot, describing them as bounding on a passage way, designating them by letters and figures, and referring to a plan on which the lots are similarly designated and the passage way is without mark, leaves the estate in the passage way in common.

The owner in fee of land may maintain a writ of entry to establish his title against the owner of a perpetual right to use it for a passage way.

A deed to A in trust for certain purposes during the life of B, and, on B's decease, to the use of B's children, their heirs and assigns, vests the legal estate in B's children on B's death.

BIGELOW, J. The premises demanded in this action were originally a portion of a large tract of land, lying at the corner of Leverett and Berry (now Minot) Streets, in the westerly part of Boston, formerly belonging to Isaac Vibert. After the death of Vibert in 1776, the entire estate remained undivided in his

heirs until the year 1809, when his three surviving children entered into an agreement for the division of his real estate, which was carried into effect in May of that year, by mutual releases from each to the other, of their respective shares, which had been agreed upon and set out in severalty. In the division of this large tract of land among the three heirs, the premises now demanded were described as " a passage way twenty five feet wide and seventy five feet deep, leading from Berry Street to lot C. No. 3, to be always kept open to said lot No. 3." The descriptions, in all the deeds of release of the heirs to each other, were exactly alike in this particular; and the several lots, as set out to the heirs, were bounded on this passage way.

The question is, whether, by the true construction of these deeds, the land comprehended in the passage way was divided and conveyed in severalty by their respective deeds to each other, one third to each, or whether it remained undivided and in common. If the former is the true construction, then the demandants have no title to the estate in controversy, because it has all been conveyed by deeds of their ancestors, containing descriptions exactly corresponding with the original division. If the latter is the correct interpretation of the deeds, then the demanded premises have never been conveyed by the ancestors of the demandants, and the fee of an undivided portion of the passage way still remains in the demandants as tenants in common.

Whether the rule of interpretation, in relation to boundaries in deeds upon highways and public roads, would be applicable to a case of this character, where the boundary is on a private passage way, laid out by tenants in common for their own special use, so as to carry the fee to the centre of the passage way, unless a contrary intent clearly appeared from the terms of the grant, we have no occasion to determine, because we think it is very clear that such was not the intent of the parties to the original division of the estate in question, as manifested by their deeds.

In making the division of the entire parcel of land, the several lots, set out to the heirs, are distinguished by letters and figures,

designating the individual to whom each lot belongs; and the admeasurements of each lot are accurately given. In each deed reference is made to a plan of the estate, which was recorded with the deeds of partition, bearing the signatures and seals of the several heirs, and the material part of which is copied in the margin.* This plan is now produced, and identified as the one mentioned in the several deeds by which the division was made. On reference to this plan, it will be found that each lot of land is accurately and distinctly marked out, and designated by letters and figures, corresponding to those contained in the several deeds, and indicating the separate and distinct lot of each heir as established by the division. The entire tract is thus set out in severalty, with the exception of the passage way. This alone remains on the plan without mark or description.

Now it is a well settled rule of construction, that where a plan

This may certify that we, the subscribers, have this day mutually agreed to the division of the estate of Mr. Isaac Vibert of Boston, shipwright, deceased, as is delineated on this plan, and we have this day executed deeds of release and quitclaim to each other of the portion as set off to each on this plan, which is the same referred to in the deeds this day executed by us. Witness our hands and seals this twenty-fourth day of May 1809.

Hannah Morgan (Seal)
Sarah Gummer (Seal)
William Morgan (Seal)
Mary Jennison (Seal)
William Jennison. (Seal)

is referred to in a deed, as containing a description of an estate, the courses, distances and other particulars, appearing upon the plan, are to be as much regarded, in ascertaining the true description of the estate, and the intent of the parties in making it, as if they had been expressly recited and enumerated in the deed. *Lunt* v. *Holland*, 14 Mass. 149. *Davis* v. *Rainsford*, 17 Mass. 207. Applying this rule to the present case, and looking at the situation and objects of the parties at the time of the partition, we think it is manifest that they did not intend to divide the land included in the passage way. It was left open for the use and benefit of each and all as owners of the lots adjoining and bounding thereon. There was not only no occasion for its division, but a manifest necessity for retaining it as the common property of the heirs, to be used and enjoyed for the benefit of these several estates. The title to it therefore remained in the heirs as tenants in common. It follows, as a necessary consequence, that the fee in an undivided portion of the premises thus left for a passage way, and constituting the premises demanded in this suit, never passed out of the ancestors of the demandants. In these conveyances of the respective estates set off to them in severalty, the language used is precisely like that employed in the original deeds of release, which, as we have already seen, conveyed only a right to use the passage way, but did not pass the fee. The demandants are therefore entitled to the fee in an undivided portion of the premises.

It is no answer to this action, that the tenant is the owner of an easement in the demanded premises, and has therefore the right, as against these demandants, to use it forever as a passage way. The right to a fee, and the right to an easement in the same estate, are rights independent of each other, and may well subsist together, when vested in different persons. Each can maintain an action to vindicate and establish his right; the former to protect and enforce his seizin of the fee; the latter to prevent a disturbance of his easement. The demandants can therefore well maintain their writ of entry, because as the tenant is in, occupying the entire premises, and denying the demandants' seizin, this is the appropriate remedy by which to assert

their title to the fee. *Hancock* v. *Wentworth*, 5 Met. 450. And their recovery in this action will in no way affect or impair the rights of the tenant in the easement in the premises.

It was objected, by the tenant, that the title of three of the demandants, derived from their mother, Sarah Gummer was defective, because it appeared that she, together with her husband, conveyed her interest in the estate to Samuel Danforth, by deed dated November 6th 1803. But upon examining this deed, it appears that the estate was conveyed to Danforth in fee, in trust for certain purposes, during the life of said Sarah, and " from and after the decease of said Sarah, to the use of such children of said Sarah as she may leave, their heirs and assigns." Upon familiar principles, upon the death of Sarah Gummer, in 1812, the use thus created became immediately executed in the demandants, her children; and the legal estate was then vested in the *cestuis que use* by virtue of the statute of uses. 1 Sanders on Uses, (4th ed.) 85, 98.

Upon the title as it now stands, we are of opinion that the demandants are entitled to recover five twelfths of the demanded premises, subject to the easement of the tenant therein, and to the claim for betterments which was reserved to the tenant at the trial. *Judgment accordingly.*

*J. M. Pinkerton*, for the demandants.

*W. Brigham*, for the tenant.