FRANK E. CLIFTON *vs.* WATUPPA RESERVOIR COMPANY.

Bristol.     October 24, 1922. — November 29, 1922.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Negligence,* In operation of dam.  *Easement,* Of flowage, Infringement.  *Water and Water Rights.  Real or Personal Property.*

A building of wooden frame construction, erected upon and supported by piling about five feet apart driven into the bed of a pond, forms with the piling one entire structure and is not to be treated as a structure independent and disconnected from the piling.

If the owner of land, flowed by a pond in accordance with a grant to a corporation of a right of flowage by raising the waters of the pond to a certain height, inserts piling in the bed of the pond five feet apart and erects and maintains buildings thereon, his conduct constitutes an unlawful interference with the dominant easement and precludes him from recovering from the corporation damages to the buildings and their contents, resulting from a raising of the waters of the pond above the height limited in the grant of the easement caused by a negligent operation of the corporation's dam which did not amount to an intention on its part to inflict injury.

TORT for damages to buildings and personal property of the plaintiff alleged to have resulted from negligence of the defendant in so operating its dam as to raise the waters of South Watuppa Pond above their proper level.  Writ dated May 3, 1920.

In the Superior Court, the action was tried before *Qua,* J.  Material evidence is described in the opinion.  At the close of the evidence, the defendant moved that a verdict be ordered in its favor.  The motion was denied.  It then asked for the following rulings:

"1. On all the evidence, the plaintiff is not entitled to recover.

"2. Upon the undisputed facts, the plaintiff's buildings were erected and stand upon piling below high water mark, which constitute an unlawful interference with the defendant's right of flowage, and there being no evidence that the defendant wilfully injured the plaintiff, the jury must find for the defendant.

"3. If the buildings on the plaintiff's land were erected and stand on filling, piers, piles or upon foundations placed in the Pond below high water mark without the permission of or release from the defendant, then the plaintiff can not recover.

"4. If the buildings on the plaintiff's land were erected and

stand upon filling, piers, piles or foundations placed in the pond below high water marks, without permission of or release from the defendant, then the plaintiff can not recover, unless the alleged damage was due to the wilful misconduct of the defendant."

"7. Upon the undisputed facts, the flooding of the plaintiff's property was due to natural phenomena which amounted in law to an 'act of God' and the plaintiff can not recover."

"9. Defendant's right to maintain its dam and store water to the level permitted under its charter and deed of flowage, can not be qualified or diminished by the erection (since the dam was erected) by other parties' structures which obstruct and diminish the natural capacity of the channel of the river between said dam and tidewater.

"10. If plaintiff's predecessor in title, without permission of the defendant, placed piles in the South Watuppa Pond, below full pond level, and erected thereon a building, and plaintiff after acquired the same and continued to maintain said building and use the same then he is continuing a violation of the defendant's rights and can not maintain this action against it."

The rulings were refused. There was a verdict for the plaintiff in the sum of $1,250; and the defendant alleged exceptions.

*I. Brayton,* for the defendant.

*B. Cook, Jr.,* for the plaintiff.

BRALEY, J. The defendant "is a corporation organized under a special charter granted in 1826, by c. 31 of the acts of that year, for the purpose of establishing a reservoir of water in the Watuppa ponds for the benefit of the manufacturing establishments on the Fall River; and it had a special authority to make reserves of water by erecting a dam across the outlet of the Watuppa ponds two feet higher than the dam already erected by the Troy Cotton and Woollen Manufactory, and to draw off said reserved water in such quantities, at such times, and in such manner as it should deem best for all concerned; and was authorized to acquire, by purchase or otherwise, and to hold and possess, such real estate, not exceeding ten thousand dollars in value, as might be necessary for the purposes of the act." *Watuppa Reservoir Co.* v. *Mackenzie,* 132 Mass. 71, 72. The dam of the Troy Cotton and Woollen Manufactory built in 1813 raised the natural level of the Watuppa ponds three feet. The defendant's dam was built in 1827 below

the dam of the Troy company of such height as to flow the ponds two feet higher, and it acquired by grant from riparian owners rights of flowage as high as its dam. *Watuppa Reservoir Co.* v. *Fall River,* 147 Mass. 548, 550.

By deed of Rhoda Warren, one of the plaintiff's predecessors in title, given in 1830, the defendant was granted the right to flow the land in question, "raising and keeping raised the water of the Watuppa Ponds as high as an iron bolt which is driven into a pudden stone rock in land adjoining the North Pond owned by Barnabas & Abraham Blossom, known by the name of Phillip's Swamp." The declaration alleges and the evidence shows that if the water is raised above "full pond" it exceeds the height of the dam as well as of the iron bolt in the pudding stone rock. In the plaintiff's title deed the premises are referred to as "flowed land," no portion of which would be uncovered when the pond was at full level, and in its natural condition and before any flooding it was covered by water. But when the plaintiff entered into possession quite an amount of filling had been put in where the lot abutted on the street, which at this point forms part of the northerly shore of the south pond, and there were two buildings with platforms, and also a portion of a third building, and a smaller building, all of "wooden frame construction," which with the platform and walks attached thereto, extended for a considerable distance over the water, and were supported by piles about five feet apart driven into the bed of the pond. The buildings with their equipment and furnishings were used by the plaintiff in "carrying on a boating and fishing business" when the overflow occurred. It was undisputed, or the jury would have been warranted in finding that the water rose above "full pond level" flooding the floors "some six or seven inches" damaging the buildings and causing loss to the plaintiff of his stock in trade consisting of "candy, fishing tackle, cigars and tobacco."

The right to occupy and improve the property was as between the parties undoubtedly limited only by the easement. The buildings, however, with the piling by which they are supported are to be treated as entire, and not as disconnected and independent structures. The piling was the indispensable foundation or substructure on which they rested and were supported and hence it was incorporated and formed part of their construction. *Trues-*

*dell* v. *Gay,* 13 Gray, 311, 312.  *Attorney General* v. *Gardiner,* 117
Mass. 492.  *Reardon* v. *Murphy,* 163 Mass. 501.  *Smith* v. *Adams,*
206 Mass. 513, 515.  *Baker* v. *Waldron,* 92 Maine, 17.  *Benedict*
v. *Ocean Ins. Co.* 31 N. Y. 389, 394.  The difference between
this mode and the filling in of the whole area followed by the
erection of buildings thereon would be merely one of degree in its
limitation of the defendant's right of unobstructed flowage.  The
erection and maintenance of the buildings which were annexed
to the soil constituted an unlawful interference with the dominant
easement, and the plaintiff cannot recover without proof of inten-
tional injury, of which there is no evidence.  *Philbrick* v. *Ewing,*
97 Mass. 133.  *Macomber* v. *Godfrey,* 108 Mass. 219.  *Watuppa
Reservoir Co.* v. *Mackenzie, supra.  Black* v. *New York, New Haven
& Hartford Railroad,* 193 Mass. 448, 450–452.

The motion for a directed verdict should have been granted,
and the exceptions must be sustained and judgment entered for
the defendant.

*So ordered.*